UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

4:15-cv-04104-LLP

KEITH F. MILLER,                                    :

        Plaintiff,                           :

v.                                                 :          BRIEF IN SUPPORT OF
                                                              PLAINTIFF'S MOTION TO
METROPOLITAN GROUP PROPERTY            :                  COMPEL
AND CASUALTY INSURANCE
COMPANY,                                            :

        Defendant.                           :

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

Defendant Metropolitan Group Property and Casualty Insurance Company

("MetLife")[1] refuses to answer and otherwise respond to discovery requests that have

been repeatedly compelled in South Dakota.  Indeed, the items at issue have numerous

decisions expressly addressing the relevance and appropriateness of such discovery

requests.  Rather than substantively respond to the discovery, MetLife makes boilerplate

objections that have been repeatedly denounced in the Federal District Court of South

---

[1] Metropolitan Group Property and Casualty Insurance Company is referred to as
MetLife because that is the name it uses in conducting business and used by the
Defendant in responding to the various discovery requests.  (*See* Second Affidavit of Eric
T. Preheim ("2nd Aff. ETP"), Ex. C at 3, 4, 7, 8, and 9 (referring to itself as MetLife),
filed herewith; *See also* Doc. 13-1, Ex. 1, at 2-5 (stating at the bottom that "MetLife Auto
& Home is a brand of Metropolitan Property and Casualty Insurance Company and its
affiliates, Warwick, RI").  In addition, it is simply easier to refer to the company as
MetLife as opposed to Metropolitan Group.

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

Dakota.  MetLife's cavalier approach to the discovery process reached new heights by

making improper geographic and temporal objections and refusing to answer numerous

Interrogatories by claiming that the phrase "facts and documents" in an interrogatory

counts as two interrogatories.  MetLife's ongoing and unyielding attempts at delay and

obfuscation must stop.

### Standard of Review

"The scope of discovery under Federal Rule of Civil Procedure 26(b) is extremely

broad."  *Gowan v. Mid Centruy Ins. Co.*, 2015 WL 5315692, at *3 (D.S.D. Sept. 11,

2015) (citation omitted).  This is because "'[m]utual knowledge of all the relevant facts

gathered by both parties is essential to proper litigation.  To that end, either party may

compel the other to disgorge whatever facts he has in his possession.'" *Id.* at *3 (citation

omitted).  "Relevancy is to be broadly construed for discovery issues and is not limited to

the precise issues set out in the pleadings.  Relevancy . . . encompass[es] any matter that

could bear on, or that reasonably could lead to other matters that could bear on, any issue

that is or may be in the case." *Id.* at *4 (internal quotations and citations omitted).

"'Mere speculation that information might be useful will not suffice; litigants

seeking to compel discovery must describe with a reasonable degree of specificity, the

information they hope to obtain and its importance to their case.'" *Id.* (citation omitted).

"Once the requesting party has made a threshold showing of relevance, the burden shifts

2

to the party resisting discovery to show specific facts demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive." *Id.* (citations omitted). "The articulation of mere conclusory objections that something is 'overly broad, burdensome, or oppressive,' is insufficient to carry the resisting party's burden—that party must make a specific showing of reasons why the relevant discovery should not be had." *Id.*

When "the discovery requests are relevant, the fact that answering them will be burdensome and expensive is not in itself a reason" to refuse an answer to an interrogatory or response to a request for production of a document. *Id.* at *5 (citing cases). Neither is the fact that answering or responding will "involve work, which may be time consuming." *Id.* (citing cases). "Discoverable information itself need not be admissible at trial; rather, 'discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* at 6 (citation omitted).

## Background

As was noted in *Gowan v. Mid Century Insurance Co.*, 2015 WL 5315692 (D.S.D. Sept. 11, 2015), a brief overview of the "background facts[, based on the allegations in the Complaint, is] necessary to provide context." *Id.* at *1. Like many other homeowners in Sioux Falls, Plaintiff Keith Miller's ("Miller") home suffered extensive damage in a June 2014 hailstorm. (Doc. 1 at ¶¶ 6, 7.) After Miller submitted a claim under his

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

homeowner's policy, MetLife sent out an authorized agent, Salomon Collins, to "inspect" Miller's home.  (Doc. 1 at ¶ 9-11).  Salomon Collins then wrote a report, dated June 28, 2014, where he identified $1,329 as the appropriate amount to repair the hail-related damage to Miller's home.  (Doc. 1 at ¶ 12.)  Based on the severity of the damage to Miller's home, as well as the extent of damage caused by the storm in Sioux Falls, MetLife knew or recklessly disregarded the fact that $1,329 was not nearly enough to fix the damage caused by the hailstorm.  (Doc. 1 at ¶¶ 14-16, 27-30.)  Indeed, it was a blatant example of an insurer nickeling-and-diming an insured.

When MetLife found out that Miller was not willing to accept its low-ball offer, which amounted to $329 after the deductible, MetLife engaged in its practice of forcing an insured to participate in an unlawful, binding appraisal process.[2]  Specifically, MetLife repeatedly told Miller that he needed to participate in MetLife's binding "appraisal" process in order to receive any additional benefits.  (Doc. 1 at ¶¶ 31, 33-34.)  Specifically, MetLife sent Miller a standard form letter outlining the "binding" appraisal process in detail.  (Doc. 1 at ¶ 34.)  When Miller asked MetLife whether he should get a lawyer to help him with its "appraisal" process, MetLife said no.  (Doc. 1 at ¶ 35.)  Indeed, MetLife even threatened to "proceed with litigation" against Miller if he did not agree to

---

[2] MetLife's low-ball offer was later confirmed by MetLife's subsequent determination that Miller's home was damaged in the amount of $11,428.25, an amount that is still at least $30,000 less than what is owed under the policy.

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

participate in its binding arbitration process.  (Doc. 1 at ¶ 31.)

Here is the reason why MetLife did not want Miller to get a lawyer:  The "binding

appraisal" process that MetLife was forcing Miller to engage in was a misrepresentation

of what the policy actually said regarding the appraisal process and otherwise violates

South Dakota law.  (Doc. 1 at ¶¶ 36-37.)  Specifically, SDCL § 21-25A-3 establishes that

"every provision in any such [insurance] policy requiring arbitration or restricting a party

. . . from enforcing any right under it by usual legal proceedings in ordinary tribunals or

limiting the time to do so is void and unenforceable."  And the fact that the word

"appraisal" is used in the policy, as opposed to "arbitration," does not affect SDCL § 21-

25A-3's application:  "Policies which have provisions labeled as arbitration, appraisal or

any other term whereby a claim dispute resolution process can be demanded or required

by either party are likewise prohibited as such provisions constitute arbitration."  South

Dakota Insurance Bulletins and Related Materials Bulletins, Arbitration Clauses, Bulletin

98-05 at 1 (May 27, 1998) ("Any arbitration or appraisal outcome cannot be made

binding upon the parties.").  Accordingly, in an effort to appear to comply with SDCL §

21-25A-3 and the South Dakota Division of Insurance's regulations, MetLife added an

endorsement to its policy which made the appraisal process **voluntary** and ***not*** binding.

(Doc. 13-1 at 47.)

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

MetLife repeatedly told Miller, however, that the appraisal process was mandatory and binding.  (Doc. 1 at ¶¶ 33-34; Doc. 1-2 at 1 (MetLife letter stating that "Either you or we can make a written demand for an appraisal" and that it "will be binding"); Doc. 1-3 at 1 ("As noted in the policy this award is binding to all parties once it has been filed.")).  MetLife even threatened Miller with litigation if he did not complete MetLife's binding appraisal process.  (Doc. 1 at ¶¶ 31, 50; Doc. 1-1 at 2.)  When MetLife learned that Miller was not going to complete MetLife's appraisal process, MetLife did, in fact, sue Miller by serving him while he was at home.  (Doc. 18-3.)  Based on MetLife's conduct, Miller filed suit and alleged that MetLife breached its contract and engaged in various bad faith claims handling practices.

**Analysis**

### I.    MetLife's "Supplemental Objection[s]" that were added to its Supplemental Responses after the meet and confer must be rejected.

The purpose of Rule 37(a)(1)'s "meet and confer" requirement is to force the litigants to at least try to reach an amicable resolution for a discovery dispute without wasting the court's time and resources.  If appropriate, the parties will often compromise, though not always. When progress is made during the meet and confer, the responding party will usually supplement its discovery responses.  Here, MetLife responded by adding "supplemental objections."  (2nd Aff. ETP, Ex. C at 1-2.)  The "supplemental objections" added at the beginning of the Supplemental Responses must be overruled.

6

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

First, the two-page "supplemental objection" included at the beginning of MetLife's Supplemental Responses is procedurally improper. The court in *Gowan* rejected a similar tactic by another insurance company. In overruling the "general objections," the court explained: "The Federal Rules of Civil Procedure require a party objecting to discovery to show specifically how each discovery request is irrelevant or otherwise not subject to discovery." *Gowan*, 2015 WL 5315692 at *8 ("The court overrules these objections entirely as to each and every discovery response that is preceded by this litany of general objections."). The same is true here.

Moreover, MetLife identifies every Interrogatory, "with the exception of Interrogatories Nos. 28, 31, [and] 32," as being "contention" interrogatories. (2nd Aff. ETP, Ex. C at 1.) That is not true. For example, Interrogatory 29 asks the familiar question of whether Miller "made any admissions against interests." (2nd Aff. ETP, Ex. B at 38-39.) And Interrogatory 30 asks for the identity of MetLife's South Dakota insureds who received a letter like the one sent to Miller that misrepresented the need to participate in a binding appraisal process. (*Id.* at 39.) Neither of those are "contention" interrogatories. It is precisely this reason why the Federal Rules "require a party objecting to discovery to show specifically how ***each discovery request*** is irrelevant or otherwise not subject to discovery" as opposed to stating a generalized introductory objection. *Gowan*, 2015 WL 5315692 at *8.

7

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

Second, and more importantly, MetLife should not be allowed to "supplement" its discovery responses with previously unstated objections. *See* Fed. R. Civ. P. 33(a)(2) ("The responding party must serve . . . any objections within 30 days after being served with th interrogatories."); 34(b)(2)(A) (same). Allowing a party to "supplement" its responses with objections after the "meet and confer" is antithetical to resolving discovery disputes. It also contradicts the general rule that failing to assert an objection in a timely fashion is deemed a waiver of the objection. *See Benson v. Sanford Health*, 2009 WL 2524585, at *2 n.3 (D.S.D. Aug. 1, 2009) ("Thus, as a general rule, when a party fails to timely objet to interrogatories, production requests, or other discovery efforts, the objections are deemed waived. . . . This is so even though a party had an objection to make." (internal citations and quotations omitted). *See also Black Hills Molding, Inc. v. Brandom Holdings*, LLC, 295 F.R.D. 403, 411-12 (D.S.D. 2013) ("Under Federal Rule of Civil Procedure 33(b)(4), if not timely asserted, objections to discovery requests are waived, unless the court finds good cause to excuse the failure to object." (citing cases)). For these reasons, MetLife's "supplemental objections" must be rejected.

To the extent MetLife's asserted "contention interrogatory" objection warrants a response, the discussion in *Black Hills Molding* properly explains how such interrogatories are not only appropriate, but extremely helpful. Specifically, such discovery requests are crucial to "narrowing and sharpening the issues, which is a major

8

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

purpose of discovery." *Id.* at 413 (internal quotations and citation omitted).  Accordingly,

not only is MetLife's "contention interrogatory" objection untimely, it is without merit.

## II.    Metlife's objection that Miller exceeded the 40 Interrogatory limitation ignores the plain language of Rule 33 and its common application.

MetLife asserts throughout its Answers to Interrogatories that every

Interrogatory's use of the phrase "facts and documents" constitutes two Interrogatories.

(2nd Aff. ETP, Ex. B at 2-40.)  MetLife stops using its numbering system at 41.  (*Id.*, Ex.

B at 33.)  There are 26 Interrogatories that use the phrase "facts and documents."  (*Id.*,

Ex. B at 2-40.)  Thus, by MetLife's calculation, those 26 Interrogatories constitute 52

interrogatories.  The remaining six Interrogatories would then bring the total number of

interrogatories to 58 under MetLife's calculation (52 + 6 = 58).  The parties agreed to 40

interrogatories.  (Doc. 20 at ¶ 3.)

Every Interrogatory that uses the phrase "facts and documents" follows a Request

for Admission.  (2nd Aff. ETP, Ex. B at 2-40.) Specifically, the Interrogatory asks: "If

your response to Request for Admission [XX] is anything but an unqualified admission,

identify all facts and documents that you rely on to support the response."  (*Id.,* Ex. B at

2-40.)  Setting aside the legalese, the Interrogatory asks: "Why does MetLife deny the

Request for Admission."

MetLife's position that the phrase "facts and documents" constitutes two

Interrogatories ignores the plain reading of Rule 33.  Rule 33 establishes that when

9

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

counting the number of Interrogatories, one must include "all discrete subparts."  Fed. R.

Civ. P. 33(a)(1).  Because these Interrogatories do not contain any discrete subparts, the

Rule's plain language is enough to reject MetLife's position.  The result is the same when

the issue is analyzed in greater detail.

First, "facts and documents" are not properly considered "subparts" any more than

"first and last name" should be considered subparts.  If anything, as the phrase is used in

these Interrogatories, the phrase is redundant in that the identification of facts necessarily

includes identification of documents.  That is, if a document existed to support the denial,

it would be necessary to identify the document's existence.  And Rule 33 specifically

permits the responding party to answer an interrogatory by "specifying the records that

must be reviewed[.]"  Fed. R. Civ. P. 33(d)(1).  Because the Rule already blesses the

identification of documents in an answer to an interrogatory, the phrase "facts and

documents" should not be considered subparts to begin with.

Second, "facts and documents" are not "discrete" subparts as the phrase is used in

these Interrogatories:  "'interrogatories containing subparts directed at eliciting details

concerning a common theme should be considered a single question, although the breadth

of the area inquired about may be disputable.'" *Brevet Press, Inc. v. Fenn*, 2007 WL

1726526, at *4 (D.S.D. June 14, 2007) (citation omitted).  Here the "common theme" of

the Interrogatory is "why."  That is, "why does MetLife deny the Request for

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

Admission?"

The decision in *Highmark, Inc. v. Northwest Pipe Co.*, 2012 WL 997007 (D.S.D. Mar. 23, 2012), properly analyzed whether an interrogatory's subparts were truly "discrete." *Id.* at *3. In that case, the court identified four subparts to the question. *Id.* The court then explained how "[e]ach subpart seeks to obtain information concerning a "common theme" that is not disjunctive and does not contain unrelated topics." *Id.* (citing *Brevet Press*, 2007 WL 1726526, at *4.) Accordingly, the court held that each interrogatory, including the four subparts, were properly counted as one interrogatory rather than four interrogatories. The same is true here because the phrase "facts and documents" does not seek unrelated information; they seek the exact same type of information – why did MetLife deny the Request for Admission. Because the Interrogatories that use the phrase "facts and documents" are directed at one issue, "why," they should each be counted as one Interrogatory as opposed to two.

**III.    MetLife's refusal to fully respond is based on objections that have been repeatedly denounced in South Dakota.**

**A.    Interrogatory 30.**

**INTERROGATORY 30**: Identify every MetLife insured in South Dakota that, in the last five years, has received a letter from MetLife outlining the "appraisal" process as it was outlined in the body of the letter from MetLife dated November 21, 2014, attached as Exhibit B to Plaintiff's Complaint (Doc. 1). When identifying the insured, state the insured's name, last known address, and telephone number. You may redact or withhold social security numbers, health and life insurance, condition, or treatment information, and bank, credit card, or other financial account numbers of any person.

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

OBJECTION: Because Plaintiff has already exceeded the number of Interrogatories permitted under the Rule 16 Scheduling Order, Defendant declines to respond. Defendant further objects that responding would impose [a]n undue burden and expense in that there is no limitation regarding the time frame encompassed by the request nor is the[re] a geographic limitation stated. In addition, the information is not relevant to the claims and defenses in this action and the Interrogatory is not reasonably calculated to lead to the discovery of relevant and admissible evidence.

SUPPLEMENTAL OBJECTION: To clarify, Defendant continues in its objection and position that Plaintiff has improperly exceed the number of Interrogatories permitted under the Rule 16 Scheduling Order and declines to respond on that basis. Defendant objects that the Interrogatory imposes an undue burden, but withdraws its objection to the lack of a time frame and geographic scope.

SUPPLEMENTAL ANSWER: Without waiving these objections, Defendant was able to retrieve the requested information for the period of time encompassing the year of 2014. During this time period, Mr. Miller was and is the only South Dakota insured who received the letter in question or similar correspondence.

### i.     Analysis of Interrogatory 30.

Interrogatory 30 asks for the identities of other MetLife insureds who received a letter containing a description of the "appraisal process as it was outlined in the body of the letter" sent to Miller. The Interrogatory was limited to South Dakota insureds and limited to five years. MetLife's initial response was nothing but objections.

The first objection, that Miller exceeded the permissible number of Interrogatories, has already been addressed. The second objection, that responding would impose an undue burden "in that there is no limitation regarding the time frame . . . nor is the[re] a geographic limitation," had no basis in fact because *the Interrogatory specifically limited the request to South Dakota and five years*. The last objection, that the requested

12

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

information was not relevant or reasonably calculated to lead to the discovery of admissible information, is also incorrect.

Miller's Complaint specifically alleges that MetLife systematically denies and delays paying its insureds, including Miller, the full amount of benefits owed under the policy unless and until the insured completes MetLife's unlawful "binding" appraisal process. (Doc. 1 at ¶¶ 39-41, 47 (delaying)-48 (denying), 49-50, 53, and 56.)  The letter referenced in Interrogatory 30 establishes, in part, the validity of these claims.  (Doc. 1-2.) MetLife's letter is a form letter as evidenced by the fact that the body misrepresents what the policy actually says on account of the endorsement added to the policy.  Indeed, the last two sentences say that the "The above policy language may be modified by your state. Please refer to your policy for the exact appraisal language applicable for your state." (*Id.* at 1.)  Thus, it is clear that the letter sent to Miller was a form letter sent to all MetLife insurers that MetLife wants to complete the appraisal process before it will pay what it owes.

Miller's Complaint alleges that "MetLife intentionally or recklessly misrepresented to its insureds, including Miller, that a "binding" arbitration process was necessary in order to receive the benefits owned under the policy in a timely manner." (Doc. 1 at ¶ 49.)  MetLife denies this allegation.  (Doc. 13 at ¶ 17.)  Accordingly, the information requested in Interrogatory 30 is reasonably calculated to lead to the discovery of other

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

MetLife insureds in South Dakota who have also been the victims of wrongful denials

and delays unless and until they completed the MetLife's "binding" appraisal process.

Those people will be witnesses to rebut MetLife's current position that it does not require

its insureds to complete its binding appraisal process before the insured is paid additional

benefits. Thus, the identification of other recipients of MetLife's misleading form letter

is not only relevant, but essential to Miller's claim.

As to MetLife's "supplemental" objection that the Interrogatory "imposes an

undue burden," this is the epitome of a boilerplate objection. *See Lillibridge v. Nautilus*

*Ins. Co.*, 2013 WL 1896825, at *6 (D.S.D. May 3, 2013) (compelling a response because

the insurer asserted "broad, boilerplate, or cursory objections" and "failed to articulate

how this discovery is extraordinary or unusual"). In fact, it appears that MetLife can

readily obtain this information as evidenced by the fact that it claimed to do so for 2014.

However, the Interrogatory is not limited to 2014. And going back five years is a

reasonable time period for determining whether there is a systemic bad faith practice.

*See*, *e.g.*, *Id.* at *13 (granting motion to compel business records going back seven years

and even longer (January 1, 2001 to the present)). Indeed, it stands to reason that this

same letter would have been sent out in 2015 as evidenced by the fact that Miller received

his form letter on November 21, 2014. Accordingly, MetLife should be compelled to

fully respond to Interrogatory 30, under oath, rather than allowing it to get away with

14

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

unilaterally limiting its answer to 2014.

**B.    Interrogatory 32 and Requests for Production of Documents 8 and 9.**

**INTERROGATORY 32**: In the last 5 years, have you ever been a party in a civil lawsuit alleging insurance bad faith or unfair claims processing?  If so, identify the case by name, court, and trial docket number, and indicate the substance of the allegations and the outcome of the case.

OBJECTION: Because Plaintiff has already exceeded the number of Interrogatories permitted under the Rule 16 Scheduling Order, Defendant declines to respond.  Defendant further objects that responding would impose [a]n undue burden and expense in that there is no limitation regarding the time frame encompassed by the request nor is the[re] a geographic limitation stated.  In addition, the information is not relevant to the claims and defenses in this action and the Interrogatory is not reasonably calculated to lead to the discovery of relevant and admissible evidence.

SUPPLEMENTAL OBJECTION: To clarify, Defendant continues in its objection and position that Plaintiff has improperly exceed the number of Interrogatories permitted under the Rule 16 Scheduling Order and declines to respond on that basis.  Defendant objects that the Interrogatory imposes an undue burden, but withdraws its objection to the lack of a time frame and geographic scope.

SUPPLEMENTAL ANSWER: Without waiving these objections, as independently confirmed through PACER, Metropolitan Group Property and Casualty Insurance Company has not previously been sued in South Dakota Federal Court on allegations of bad faith or unfair claims processing.
Defendant has no independent records of State Court lawsuit[s] and such information is available as a matter of public record from the South Dakota Unified Judicial System.

**REQUEST FOR PRODUCTION 8**: Produce any and all documents relating to regulatory actions, including but not limited to suspension or revocation proceedings, Market Conduct Examinations, Cease and Desist Orders, Consent Orders, Reports of Examinations, Corrective Orders or Corrective Action Plans relating to Defendant's property claims handling from the past five years to present.  This request is not limited to South Dakota.

15

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

RESPONSE:  Defendant objects to this Request for Production as seeking documents that are immaterial and irrelevant to the claims and defenses.  Production of the documents is also unduly burdensome and cannot practically be accomplished with the time proved for responses under Rule 34.

Defendant is willing to reconsider its objection and response and further discuss the scope of the Request and the potential relevance of the requested materials provide that Plaintiff agrees to pay Defendant for all costs and expenses incurred related to the identification, compilation, and production of responsive materials.

SUPPLEMENTAL OBJECTION AND RESPONSE: Plaintiff has declined to limit the scope of this Request for Production, but could not explain how documents related to proceedings outside of South Dakota might potentially lead to the discovery of relevant and admissible evidence.  Nor could Plaintiff explain the rationale for the time frame specified.  Accordingly, Defendant continues and reiterates its[] previously-stated objections.

**REQUEST FOR PRODUCTION 9**: Provide copies of any Department of Insurance consumer complaints involving the Defendant from the past five years to present.  This request is not limited to South Dakota. You may redact or withhold social security numbers, health and life insurance, condition, or treatment information, and bank, credit card, or other financial account numbers of any person.

RESPONSE: Defendant objects to this Request for Production as seeking documents that are immaterial and irrelevant to the claims and defenses.  Production of the documents is also unduly burdensome and cannot practically be accomplished with the time proved for responses under Rule 34. Defendant also cannot, as a practical matter, compile and produce materials and submissions it does not receive.  Defendant is not a Department of Insurance.  Plaintiff can, and should subpoena those materials directly.

SUPPLEMENTAL OBJECTION AND RESPONSE: Plaintiff has declined to limit the scope of this Request for Production, but could not explain how documents related to proceedings outside of South Dakota might potentially lead to the discovery of relevant and admissible evidence.  Nor could Plaintiff explain the rationale for the time frame specified.  Accordingly, Defendant continues and reiterates its[] previously-stated objections.

Without waiving these objections, Defendant has so far not discovered responsive documents concerning South Dakota insureds from January 1, 2014 to the present.  If such documents are discovered in the future, copies will be promptly produced.

16

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

### i.    Analysis of Interrogatory 32 and Requests for Production of Documents 8 and 9.

Interrogatory 32 and Requests for Production 8 and 9 are related, but necessarily discrete from one another.  Specifically, Interrogatory 32 seeks information of other bad faith litigation.  Requests 8 and 9 relate to MetLife's "involvement with the regulatory sector."  *See Lillibridge*, 2013 WL 1896825, at *13.

MetLife eventually submitted partial responses to Interrogatory 32 by unilaterally limiting the answer to the "South Dakota Federal Court."  It also says that it has "no independent records of State Court lawsuit[s] and such information is available as a matter of public record from the South Dakota Unified Judicial System."  This response is insufficient for several reasons.

First, the Interrogatory is not limited to South Dakota's Federal Court.  Second, and more egregious, the contention that MetLife has no records of "State Court lawsuit[s]" is not true.  A simple search on Google led Plaintiff's counsel to *Vinson v. Metropolitan Property and Casualty Insurance Company*, 4:14-cv-00029-BRW (E.D.Ark. 2014) (claiming that MetLife was wrongfully withholding benefits by including labor costs as depreciation (2nd Aff. ETP, Ex. D at ¶ 11.)).[3]  PACER revealed that the federal case originated in Arkansas state court and was removed by MetLife.

---

[3] A copy of the Complaint in *Vinson* is attached to the Second Affidavit of Eric T. Preheim as Exhibit D for this Court's convenience.

17

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

And there is no reason to believe that South Dakota Unified Judicial System would have such information.

Second, even if MetLife was referring to only South Dakota cases when it made that statement, it is still misleading. Again, Interrogatory 32 was not limited to South Dakota. Moreover, MetLife knows that an individual can be sued in South Dakota without anything being filed with the Court. And MetLife did just that when it sued Miller on June 8, 2015, by serving him with a Summons at his home because he did not participate in MetLife's unlawful binding appraisal process. (Doc. 18-3.) MetLife never filed the Complaint. Thus, there is no court record of the lawsuit. Simply put, the South Dakota Unified Judicial System would not necessarily have the requested information for every South Dakota case because not every lawsuit gets filed with the court.

Third, if MetLife has been sued, whether it is in state or federal court, it stands to reason that it has "independent" records of the lawsuit. To claim otherwise, as MetLife does, contravenes common sense and experience. If MetLife hires lawyers to represent it when such cases are filed, as it did here, MetLife necessarily has "independent" records of the lawsuits.

MetLife also stated in its response to Request for Production 9 that it "cannot, as a practical matter, compile and produce materials and submissions it does not receive." However, as the court in *Gowan* explained, "Rule 34 of the Federal Rules of Civil

18

Procedure governs requests for the production of documents and provides that a party may ask another party to permit copying of documents 'in the responding party's possession, custody, or control.'"  *Gowan*, 2015 WL 5315692, at *5 (citation omitted). And "The rule that has developed is that if a party 'has the legal right to obtain the document,' then the document is within that party's 'control' and, thus, subject to production under Rule 34."  *Id.* (citation omitted).  MetLife does not say that it cannot obtain the documents; nor can it say such a thing.  Moreover, MetLife has not even bothered to produce those materials that it did receive.

MetLife also asserts the all-too-familiar boilerplate objection that the requested information is "immaterial and irrelevant" and "unduly burdensome."  First, each request is limited to five years.[4]  That is less than the time period used by the court in *Lillibridge*. *Id.* at *6 ("Because there is no date restriction within the interrogatory itself, the court will limit the response to interrogatory 5 as to those documents that are responsive to this request [to a 12 year period].").

Second, each request has been explicitly confirmed as being relevant and appropriate in bad faith insurance litigation – on numerous occasions.  *See*, *e.g.*,

---

[4] Again demonstrating the boilerplate nature of its objections, MetLife improperly asserted an objection to Interrogatory 32 on the grounds that it was unduly burdensome because it supposedly was not limited in time.  But the Interrogatory ***expressly limited itself to 5 years***.

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

*Lillibridge v. Nautilus Ins. Co.*, 2013 WL 1896825, at *6 (D.S.D. May 3, 2013) (First,

courts in this district have routinely allowed discovery of prior litigation related to

insurance bad faith.") (citing cases); *Lyon v. Bankers Life & Cas. Co.*, 2011 WL 124629,

at *13 (D.S.D. Jan. 14, 2011) ("Judges of this district court have in numerous cases

overruled objections to similar requests and required discovery of documents from other

litigation.") (discussing cases); *Beyer v. Medico Ins. Grp.*, 266 F.R.D. 333, 338

(D.S.D.2009) ("Production is to include litigation documents, including but not limited to

complaints, motions, court orders, and the like."); *Brown Bear v. Cuna Mut. Grp.*, 266

F.R.D. 310, 326 (D.S.D. 2009) ("Because the documents Brown Bear requests may reveal

that Cuna's alleged conduct in this case occurs frequently and as a result risks harm to

many, the requested documents may be relevant to demonstrate reprehensibility, which is

a proper consideration in a punitive damages determination.").

These cases also explained that an insurer's "involvement with the regulatory

sector" was relevant for the same reasons that other bad faith litigation was relevant.

*See Lillibridge*, 2013 WL 1896825, at *13 ("Thus, the fact that there may have been other

regulatory complaints in other states against Nautilus that are factually or legally similar

to Lillibridge's claim is relevant, and documents related to these regulatory complaints

are also discoverable."); *Lyon*, 2011 WL 124629, at *15 ("Regulatory complaints have

previously been allowed by the district court." (citing *McElgunn*, Civ. 06-05061 (Docket

20

206, p. 14) (D.S.D. 2008) ("[T]he court finds that such regulatory actions have a nexus to the harm suffered by plaintiff.")); *Beyer*, 266 F.R.D. at 339 ("The documents in Medico's possession relating to complaints made to state insurance regulators undoubtedly 'bear on' litigation over a claim of bad faith denial of benefits." (citing *Oppenheimer*, 437 U.S. at 351)).

As these cases establish, the requested information is relevant because the claims against MetLife are that it acted in bad faith by:  (1) purposefully or recklessly **denying** and **delaying** the full payment of benefits to Miller as part of an overall scheme to pay less than the amount owed under the policy; and (2) purposefully or recklessly **denying** and **delaying** the full amount of benefits owed unless and until the insured completed MetLife's unlawful "binding" appraisal process.  (Doc. 1. at ¶¶ 11-12, 15-16, 27-41, 46-50, 52-53, 56, and 58.)

Simply put, Miller was caught in MetLife's systemic approach of claims handling that includes extending low-ball offers and making misleading representations in emails and form letters.  Miller was then threatened with being sued by his insurer – and was actually sued by his insurer – because he would not agree to an unlawful claims handling process.  The requested information is reasonably calculated to establishing MetLife's scheme of wrongfully withholding payments to its insureds as evidenced by facts and documents included in Miller's Complaint.

As the court in *Lillibridge* explained: "While evidence of first-party bad faith, weather-related, property damage claims may be ***more*** relevant or factually analogous to [the insured's] claim, it does not lead to the conclusion that other bad faith claims are ***not relevant*** to this case."  2013 WL 1896825, at *6.  And Miller "is not necessarily limited to admitting evidence of identical prior claims involving the loss of a roof due to a hail storm in South Dakota to show the nexus between the requested discovery and his claim." *Id.*  "Instead, prior bad faith litigation may be relevant to show [the insurer's] knowledge and conduct and whether a pattern and practice of inadequate investigation, offering unreasonably low settlement offers, or other reprehensible conduct is being repeated among policyholders."  *Id.*

Moreover, the Complaint alleges that MetLife acted with "oppression, fraud, or malice" and is, therefore, subject to punitive damages.  (Doc. 1 at ¶ 56.)  Few things will establish the validity of such claims better than other instances of MetLife purposefully or recklessly making low ball-offers and misrepresenting what an insured needs to do before payments will be made.  *McElgunn v. Cuna Mut. Ins. Soc.*, 700 F. Supp. 2d 1141, 1152 (D.S.D. 2010) ("The evidence was therefore relevant to the issues of [insurer]'s intent and awareness of its actions and demonstrated [insurer]'s intent or plan with regard to how it handled [the insured]'s claim."); *Brown Bear*, 266 F.R.D. at 326 ("Because the documents [the insured] requests may reveal that [the insured]'s alleged conduct in this

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

case occurs frequently and as a result risks harm to many, the requested documents may

be relevant to demonstrate reprehensibility, which is a proper consideration in a punitive

damages determination."); *Lillibridge*, 2013 WL 1896825 ("[P]rior bad faith litigation

may be relevant to show Nautilus's knowledge and conduct and whether a pattern and

practice of inadequate investigation, offering unreasonably low settlement offers, or other

reprehensible conduct is being repeated among policyholders.").

 MetLife must be compelled to provide substantive responses that are not limited to

South Dakota's Federal District Court.  MetLife should do what other insurers had to do

in *Lillibridge*, *Lyon*, *Beyer*, and the other South Dakota District Court cases addressing

this issue.  MetLife should not be allowed to simply search the South Dakota District

Court filing system as it unilaterally chose to do here.  Rather, MetLife should identify the

"case name, court, docket number, the substance of the allegations, and outcome of bad

faith cases brought against it."  *See*, *e.g.*, *Lillibridge*, 2013 WL 1896825, at *6.  It should

also produce the requested documents pertaining to the regulatory actions.  *Id.* at *13-14.

### C. Requests for Production of Documents 4, 5, and 6.

 **REQUEST FOR PRODUCTION 4**: Produce the personnel files – which means any and all documents related to the individual's employment relationship with, and job performance for Defendant – of all personnel involved with Mr. Miller's claim and all supervisors in the chain of command above those personnel, up to the head of the claims department.  You may redact or withhold social security numbers, health and life insurance, condition, or treatment information, and bank, credit card, or other financial account numbers for former and current employees.

RESPONSE: Defendant objects to this Request for Production as seeking documents that are immaterial and irrelevant to the claims and defenses.  Production of the documents is also unduly burdensome and cannot practically be accomplished with the time proved for responses under Rule 34 as it requires production of materials for an indeterminable number of Defendant employees who had no involvement whatsoever in the events giving rise to this lawsuit.  Plaintiff also fails to specify what claim he is referring to as he has filed more than one claim under his policies with MetLife.

Defendant is willing to reconsider its objection and response and further discuss the scope of the Request and the potential relevance of the requested materials provide that Plaintiff agrees to pay Defendant for all costs and expenses incurred related to the identification, compilation, and production of responsive materials.

SUPPLEMENTAL RESPONSE: Plaintiff's attorneys have agreed to limit the scope of the Request to the Defendant's employees involved in processing his claim giving rise to this lawsuit.[5]  MetLife, however continues and reiterates its[] previously-stated objections.

**REQUEST FOR PRODUCTION 5**: Provide all documents related to compensation for all employees involved in roof-hail claims and their supervisors, up to the head of the claims department.  You may redact or withhold social security numbers, health and life insurance, condition, or treatment information, and bank, credit card, or other financial account numbers for former and current employees.

RESPONSE: Defendant objects to this Request for Production as seeking documents that are immaterial and irrelevant to the claims and defenses.  The documents themselves may also not independently exist, and Defendant is not obligated under Rule

---

[5] No such agreement was made between counsel as demonstrated by the same-day correspondence sent to Defendant's counsel explaining that the agreement with regard to Request for Production 4 was to "limit[] the request to Miller's June 2014 hail claim." (2nd Aff. ETP, Ex. A at 1.)  This explanation was needed because MetLife acted confused about what "claim" was at issue in this case as evidenced by its initial response that the Request "fails to specify what claim he is referring to as he has filed more than one claim under his policies with MetLife[.]"  Accordingly, it was supposedly necessary to clarify that the request was for Miller's "June 2014 hail claim."  That was the extent of any such "agreement."  There was no agreement to limit the Request to only those employees who directly worked on Miller's claim as MetLife now claims.

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

34 to "create" new business records, documents, or files at the direction of the Plaintiff. Production of the documents is also unduly burdensome and cannot practically be accomplished within the time provided for responses under Rule 34 insofar as it requires production of materials for an indeterminable number of Defendant's employees who had no involvement whatsoever in the events giving rise to this lawsuit.

Defendant is willing to reconsider its objection and response and further discuss the scope of the Request and the potential relevance of the requested materials provide that Plaintiff agrees to pay Defendant for all costs and expenses incurred related to the identification, compilation, and production of responsive materials.

SUPPLEMENTAL RESPONSE: Plaintiff's attorneys have agreed to limit the scope of the Request to the Defendant's employees involved in processing his claim giving rise to this lawsuit.[6]  MetLife, however continues and reiterates its[] previously-stated objections.

Without waiving the foregoing objections, the processing and valuation of Mr. Miller's property damage claim had no impact, adverse or positive, on the compensation of the employees involved.

**REQUEST FOR PRODUCTION 6**: Produce all documents concerning bonuses, stock compensation or any other remuneration except salary, given to any claim representative in 2013, 2014, and 2015, who handled Mr. Miller's claim.

RESPONSE: Defendant objects to this Request for Production as seeking documents that are immaterial and irrelevant to the claims and defenses.  Production of the documents is also unduly burdensome and cannot practically be accomplished with the time proved for responses under Rule 34.  Plaintiff also fails to specify what claim he is referring to as he has filed more than one claim under his policies with MetLife.

SUPPLEMENTAL RESPONSE: Plaintiff's attorneys have agreed to limit the scope of the Request to the Defendant's employees involved in processing his claim giving rise to this lawsuit.[7]  MetLife, however continues and reiterates its[] previously-stated objections.

---

[6] Again, this is not an accurate statement for the reasons previously articulated in footnote 5.

[7] Again, this is not an accurate statement for the reasons previously articulated in footnote 5.

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

Without waiving the foregoing objections, the processing and valuation of Mr. Miller's property damage claim had no impact, adverse or positive, on the compensation of the employees involved.

### i.      Analysis of Requests for Production of Documents 4, 5, and 6.

Requests for Production 4, 5, and 6 pertain to employee files and compensation. MetLife continues with its boilerplate irrelevant and burdensome objections.  MetLife also made hard-to-believe assertions that it does not know what "claim" the request pertains to by stating:  "Plaintiff also fails to specify what claim he is referring to as he has filed more than one claim under his policies with MetLife."[8]  (2nd Aff. ETP, Ex. A, at 42, 43.)  MetLife then continued with its habit of asserting objections that are as unnecessary as its various "fails to state a time period" objections.

For example, MetLife responds to Requests 4 and 5 by claiming that the request "requires production of materials for an indeterminable number of MetLife employees[.]" This is simply not true as MetLife certainly knows how many employees it has.  Indeed, MetLife specifically identified numerous employees who worked on Miller's claim in its initial disclosures, including Nathaniel Persons, Mike Wise, James Deux, Nicholas Brau, Michelle Vietmeier, Marc Moreno, Jon Landschulz, Gregory Spratley, and Ashley Underwood.  MetLife must know who the supervisors of those employees are.  At the

---

[8] Again, at the meet and confers, Plaintiff's counsel made it abundantly clear – firmly – that the "claim" referred to in the discovery requests was the one that has resulted in this federal court action.  MetLife's gamesmanship on this issue is not well taken.

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

very least, MetLife could have, and should have, produced those employee files.

Nonetheless, in an effort to "clarify" the Requests, MetLife was told during the initial meet and confer on September 17, 2015, that the Requests were limited to Miller's hail claim that was at issue in the Complaint, which was then put in writing and sent to Defendant's counsel. And at the follow-up meet and confer, on October 9, 2015, it was again made clear that Request for Production 4 was "limit[ed] to Miller's June 2014 hail claim." (2nd Aff. ETP, Ex. A at 1.) The same was done with Requests 5 and 6. (*Id.*) Despite repeatedly clarifying that these requests were "limit[ed] to Miller's June 2014 hail claims," MetLife continued in its refusal to produce a single responsive document. Not one file; not one page. Still, even today, nothing has been produced in response to these discovery requests.

Instead, MetLife repeatedly misrepresented that "Plaintiff's attorneys have agreed to limit the scope of the Request to the Defendant's employees involved in processing his claim giving rise to this lawsuit." (2nd Aff. ETP, Ex. B, at 7, 8.) No such representations were made by Plaintiff's counsel. (2nd Aff. ETP, Ex. A at 1.) Rather, it was made clear that the request was to include all employees involved in Miller's hail claim and their supervisors, up to the head of the claims department. What is remarkable is that even with MetLife's unilaterally narrowed construction of the discovery requests, it ***still*** refused to provide ***any*** responsive documents.

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

MetLife's refusal to produce a single employee file is nothing but a bold-faced rebuke of every case in South Dakota that has addressed this issue. *Hill v. Auto Owners Insurance Co.*, 2015 WL 1280016, at *8-9 (D.S.D. Mar. 20, 2015) ("The court begins with the basic premise that personnel files in bad faith actions have routinely been found to be relevant and discoverable." (citation omitted)); *Lyon v. Bankers Life & Cas. Co.*, 2011 WL 124629, at *8 (D.S.D. Jan. 14, 2011) (citing cases); *Torres v. Beverly Enterprises, Inc.*, Civ. 01-5056 (Docket 43); *Swigart v. Progressive Classic Insurance Company*, Civ. 04-5059, 2005 WL 1378754 at *1 (D.S.D. April 29, 2005).

The closest case analyzing this issue is *Hill v. Auto Owners Insurance Co.*, 2015 WL 1280016 (D.S.D. Mar. 20, 2015).[9]  There, the court rejected the insurer's argument that the requested employee files should be limited to only the one person who processed the claim and that person's immediate supervisor.[10]  *Id.* at *8.  In doing so, the Court explained that the plaintiffs were "not seeking just information about the specific facts of the handling of their own claim."  *Id.*  "Rather, they [sought] evidence of incentives and disincentives placed upon claims handlers by those higher up in the chain of command

---

[9] It is not, however, the most recent.  *See Gowan v. Mid Century Ins. Co.*, 2015 WL 5315692 (D.S.D. Sept. 11, 2015.)  While *Gowan* involved worker's compensation insurance, the decision and analysis is entirely consistent with the decision in *Hill*.

[10] It should be noted that the insurer in *Hill* at least produced the claims handler's employee file, as well as the direct supervisor's file.  *Id.* at *8.  MetLife refuses to do even that.

28

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

that would tend to affect decisions the claims handlers make in individual claims." *Id.*

And "[t]hat would include bonuses and disincentives applied to those at the head of the

claims department, as it would be entirely rational to suppose that such motivational

pressure brought to bear on the head of a department would be passed on to those

employees in his or her supervision." *Id.*

The rationale in *Hill* applies directly to this case.  Again, Miller's Complaint

establishes that MetLife is knowingly or recklessly delaying and denying payments that

are less than the amount owed under the insurance policy.  Information in the employees'

files, including bonuses or other compensation information "applied to those at the head

of the claims department," will establish the "motivational pressure" placed on the

various employees who processed Miller's claim.  *See Id.*

Furthermore, "Personnel files contain performance reviews that show the criteria

on which employees are evaluated, which are often improper.  Personnel files frequently

show claim handlers being given explicit instructions to save on claims.  Personnel files

show incentives for claim handlers." *Id.* at *9 (internal quotations and citation omitted).

And "entry level employees [such as claims handlers] are frequently not made privy to

strategies and plans of upper level management.  They are usually paid differently,

evaluated differently, and given different goals and targets.  The incentive plans available

to upper level employees are almost always different than those available to lower level

personnel." *Id.* (internal quotations and citation omitted).

As the court in *Hill* explained, limiting the response to just the claims handler and the immediate supervisor can deprive the plaintiff of the most crucial information:  "In another bad faith case litigated in this district, the evidence of institutional pressure that was brought to bear on an insurance company's claims handlers was not in the personnel file of the claims handler herself, nor was it in her immediate supervisor's file[.]" *Id.* Instead, "the entirely relevant evidence was found in the personnel file of the regional claims manager." *Id.* (citing *Fair v. Royal & Sun Alliance*, 278 F.R.d 465, 474-76 (D.S.D. 2012); Docket 43-38 (Trial Exhibit from *Torres v. Travelers Ins.*, Civ. 01-05056 showing evidence of bonus program in senior claims manager's file)); *See also Gowan*, 2015 WL 5315692 ("Furthermore, in cases where the insurance company tried to limit discovery to the claims handler and his or her immediate supervisor, that attempt has been rejected." (citing cases)).  And "the higher up the chain of command one finds evidence of improper intent, the greater the likelihood that the decisions made in the [] case were the result of company policy or custom, which in turn bears on punitive damages." *Id.* (citing *Roth v. Farner-Bocken Co.*, 667 N.W.2d 651, 666 (S.D. 2003)).

The employee files are even more important in this case because MetLife refused to pay Miller any additional benefits under his policy unless and until he completed MetLife's unlawful, binding "appraisal" process.  Miller's Complaint and attached

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

exhibits establish that MetLife has implemented a policy directed at delaying and denying

payments in violation of South Dakota law and the policy's very own endorsement.

Evidence of this company-wide policy is reasonably calculated to be located in the

employee's reviews:  "use the appraisal process more" or "do not pay the full replacement

cost until it has been through the appraisal process."  And evidence of such a company

wide policy would also exist in a supervisor's file:  "your claims handlers need to use the

appraisal process more."  The head of the claims department's file would also logically

contain similar "guidance" from his or her superior: "Your department is the only

department that has not satisfactorily achieved MetLife's goal of using alternative dispute

resolution to control costs.  Other departments have had success with the appraisal

process.  Implement the necessary steps for your department to do so as well before the

end of the next fiscal quarter."

Of the three examples, the most significant is the example in the department head's

employee file because, "[a]s one defense expert stated in *Torres*, '[i]f you give somebody

a number, an objective they have to reach, and you tie it to their career, they are going to

reach that number or they are going to manipulate that number so that it comes out the

way they want it. And believe me it's been done. I have seen it done.'" *Lyon*, 2011 WL

124629, at *8 (citation omitted).  When considering the reasoning in *Hill*, along with the

unique facts about MetLife's unlawful, binding "appraisal" process, MetLife should have

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

provided a substantive response.[11]  Instead, MetLife responded by asserting boilerplate

objections that have been repeatedly rejected in South Dakota.  Most remarkable,

however, is the fact that MetLife unilaterally construed the requests to be limited to only

those employees that worked on Miller's claim, ***while simultaneously refusing to even***

***produce those employee files.***  MetLife cannot be allowed to get away with such blatant

discovery abuse.

As to the information relating to the employees' compensation, this too has been

repeatedly acknowledged as being relevant in cases such as this.  For example, in

*Lillibridge*, the court specifically explained that "this information is relevant because

monetary incentives could establish company and employee motives for how [the insurer]

investigates or handles claims with its policyholders and could lead to other facts that

could bear upon a punitive damages or bad faith determination."  *Lillibridge v. Nautilus

Ins. Co.*, 2013 WL 1896825, at *11 (D.S.D. May 3, 2013) (citation omitted).  The same

rationale was used in *Lyon*:  "Bonus programs may provide some evidence of the

---

[11] MetLife has not asked for a protective order, presumably because it has not
produced anything needing such protection.  Miller is agreeable to one to the extent it is
needed when considering that Miller's discovery requests specifically allow for the
redaction or withholding of "social security numbers, health and life insurance, condition,
or treatment information, and bank, credit card, or other financial account numbers of any
person."  Like every other plaintiff in a discovery dispute with an insurance company,
Miller has "no interest in health care forms, 401(k) documents, I-9 forms, or W-2
forms[.]"  *Gowan*, 2015 WL 5315692 at *9.  Rather, Miller only asks for that which has
been routinely ordered to be produced in South Dakota in insurance bad faith cases.

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

motivation of claims personnel in evaluating a . . . claim.  Qualifying for a monetary

bonus, or other employee incentive, because of the manner in which defendant's

employees respond to a claim, is certainly relevant to a bad faith claim." *Lyon*, 2011 WL

124629, at *10.  And in *Hill* the court, again, recognized that "evidence of compensation

is relevant to plaintiffs' bad faith claim." *Hill*, 2015 WL 2092680, at *15 (citing *Torres*

*v. Travelers Ins. Co.*, Civ. 01-05056-KES, 2004 U.S. Dist. LEXIS 31888, at *42-46

(D.S.D. Sept. 30, 2004)).  MetLife's refusal to produce a single responsive document

relating to these Requests is yet another example of MetLife's inappropriate discovery

approach taken throughout this case.

     **D.**     **Request for Production of Document 12**.

     **REQUEST FOR PRODUCTION 12**: Produce any and all documents, including
pictures and reports, relating to every investigation conducted by Salomon Collins during
the past five years until the present.  You may redact or withhold social security numbers,
health and life insurance, condition, or treatment information, and bank, credit card, or
other financial account numbers of any person.

     RESPONSE: Defendant objects to this Request as immaterial and irrelevant.  The
Request is also unduly burdensome.  Defendant is not the employer of Salomon Collins.
Mr. Collins' employer has agreed only to produce the documents and records produced
with MetLife's Rule 26(a)(1) Initial Disclosures.  *See* response to Request for Production
No. 1, above.[12]

     SUPPLEMENTAL OBJECTION AND RESPONSE: In addition to the foregoing
objections, Defendant has no way of determining what other investigations, if any,

     [12] The only Salomon Collins' report provided by MetLife in its initial disclosures
was the report identified in Miller's Complaint.

33

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

Mr. Collins might have performed for Defendant and its insureds without manually
reviewing every claim where Defendant retained the services of Mr. Collins' employer.
Moreover, Plaintiff has refused, without explanation or reason, to limit the time frame
involved or geographic scope of this request, making compliance and production
unreasonably burdensome.

### i.    Analysis of Request for Production of Document 12.

Request for Production 12 asks for documents relating to Salomon Collins'

investigations of claims on behalf of MetLife.  The Request goes back five years until the

present.  The Request is not limited to South Dakota.

MetLife responded to this Request in its usual fashion:  asserting irrelevant and

burdensome objections.  The Request, however, is relevant because Miller's Complaint

alleges that MetLife is knowingly or recklessly delaying and denying payments that are

less than the amount owed under the insurance policy.  One way MetLife is doing this is

by using agents that intentionally or reckless ignore obvious and widespread damage

covered under the policy.  (Doc. 1 at ¶¶ 10-16, 22-28.)

Specifically, this Request goes to the fact that Salomon Collins claimed to have

investigated Miller's home and determined that $1,329 was an appropriate amount to pay

Miller.  (Doc. 1 at ¶¶ 10-12.)  Salomon Collins' conclusions were knowingly or recklessly

false because Miller's home sustained obvious, widespread damage.  (Doc. 1 at ¶¶ 15-16.)

Indeed, the hailstorm involved up to three-inch hail in Miller's neighborhood.  Because

MetLife accepted Salomon Collins' conclusion under these circumstances without

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

question, and because MetLife hired Salomon Collins to perform the purported

"investigation," it knew or recklessly disregarded the fact that Salomon Collins had a

predictable practice of failing to conduct a reasonable investigation as part of an attempt

to limit the amount of benefits paid.  (Doc. 1 at ¶¶ 16, 26.)  And if MetLife is willing to

accept Salomon Collins' conclusion based on his purported "investigation" in this case, it

stands to reason that his other investigations on behalf of MetLife routinely ended with

Collins finding little or no damage.  That, in turn, would also establish that MetLife was

using Salomon Collins because he could be "trusted" by MetLife to reduce the amount of

benefits paid under the policy.  Accordingly, this Request is relevant to the specific

claims in this case.

        This Request is also not unduly burdensome as MetLife, again, claims.  MetLife

claims that it "has no way of determining what other investigations, if any, Mr. Collins

might have performed for Defendant and its insureds without manually reviewing every

claim Defendant retained the services of Mr. Collins' employer."  First, when considering

MetLife's obvious nonchalant approach to its discovery responses, Plaintiff's counsel

questions the sincerity of the claim that an electronic search cannot be performed.

Second, because MetLife has insisted in its initial disclosures that Salomon Collins "is

only to be contacted through MetLife's attorneys," MetLife could simply ask Salomon

Collins.  Further, because Salomon Collins bills MetLife for his investigations, it stands

to reason that the billing information would be a good place to start.  Third, and more

importantly, as the court in *Hill* explained, "the fact that producing discovery is

burdensome is not sufficient to preclude discovery of that information because all

discovery entails some inherent cost and burden to the producing party."  *Hill*, 2015 WL

2092680, at *12 (citing cases).  MetLife has the information, it just needs to produce it.

## Conclusion

It is clear that MetLife's approach to these discovery requests has been that of a

scofflaw.  Not only did it repeatedly make objections that have no basis in reality, it relied

on the all-too-familiar boilerplate objections that have been resoundingly rejected in

South Dakota.  And perhaps most troubling is the fact that MetLife refused to produce

those documents that it clearly has at its disposal, such as the employee files of those who

processed Miller's claim.  MetLife refused to produce such basic information even after

two meet and confers, which forced Miller to file this Motion.

Accordingly, it is necessary that MetLife pay Miller's attorneys' fees pursuant to

Rule 37(a)(5).  More importantly, an award of attorneys' fees is appropriate when

considering the Court's decision in *Lillibridge*.

4:15-cv-04104-LLP
Brief in Support of Plaintiff's Motion to Compel

Dated this 10th day of November, 2015.

FULLER & WILLIAMSON, LLP

/s/ Eric T. Preheim
Eric T. Preheim
7521 South Louise Avenue
Sioux Falls, SD 57108
Phone:(605) 333-0003
Fax:   (605) 333-0007
Email: dnelsen@fullerandwilliamson.com
       epreheim@fullerandwilliamson.com
*Attorneys for Plaintiff Keith F. Miller*

## Certificate of Service

I certify that on the 10th day of November, 2015, I e-filed and served via CM/ECF Filer (PACER), a true and correct copy of the foregoing Brief in Support of Plaintiff's Motion to Compel upon:

Jeff L. Bratkiewicz
BANGS, MCCULLEN, BUTLER, FOYE & SIMMONS, LLP
jeffb@bangsmccullen.com
*Attorney for Defendant*

/s/ Eric T. Preheim
One of the Attorneys for Plaintiff

37